JOHN BOWEN *vs.* MURDOCH MATHESON & others.

An action for conspiracy will not lie in favor of a shipping-master to recover damages against persons who combine together and form an association to control the business of the shipping-masters of a city, by requiring the members, to conform to certain rules and rates, and to use their best endeavors to prevent their boarders from shipping in any vessel where any of the crew are shipped from boarding-houses not in good standing with the association, and to abstain from shipping men from any office after the association shall have suspended business with it, and who in pursuance thereof take their men out of ships because the plaintiff's men are in the same, and refuse to furnish and ship men to the plaintiff, and prevent men from shipping with him, and notify the public that they have laid him on the shelf, (that is, are acting against him as a shipping-master,) and notify his customers and friends that he cannot ship seamen for them, and prevent his getting seamen to ship, and thus break up his business.

TORT. The declaration was as follows: " And the plaintiff says that on the 17th day of July current, and for thirty years previous thereto, he had followed the business and calling of shipping-master and agent in Boston; had acquired great experience therein, and a numerous and valuable set of customers and employers; and, from the pursuit thereof, had acquired great gains, and had established a valuable and lucrative business;

* That the soldier may maintain an action for money had and received in such case, see *Sullivan* v. *Fitzgerald*, 12 Allen, 482.

all of which was well known to the defendants. Yet the defendants heretofore, to wit, on the first day of June, 1863, and from that time forward to the present time, unlawfully and maliciously conspired together, and with others whose names are to the plaintiff unknown, for their own private good and ends, and to injure the plaintiff in his business and calling, and to control the business of the shipping-masters of Boston, for their own private good and ends, by compelling them to ship all their seamen from them, and their fellow-conspirators, and at rates established by them, and to destroy the business and calling of such shipping-masters and agents as disregarded their terms rates and rules, a copy of which is hereto annexed. And now the plaintiff avers that he disregarded said conspirators, and their rates and rules, pursued his said business as aforetime, and according to law ; and that the said defendants, pursuing their said conspiracy, counselled and agreed among themselves and their fellow-conspirators that they and their fellow-conspirators should and would prevent the plaintiff's obtaining any seamen as shipping-master, and counselled and agreed among themselves, as aforesaid, to refuse to ship any seamen to him as shipping-master; and to refuse to allow any seamen boarding at their houses to ship with him at his shipping-office, to prevent his obtaining any seamen ; to prevent any seamen going in any ship for which he was acting as shipping-master and agent ; and publicly to notify merchants and ship-masters not to employ him ; and publicly give notice that said plaintiff had been 'laid on the shelf,' meaning thereby that they, the said conspirators and their fellow-conspirators, were acting against him, as aforesaid. And the plaintiff avers that the said defendants, with their fellow-conspirators as aforesaid, in pursuance of their conspiracy as aforesaid, did each and every of the above acts and things against the plaintiff; did take their men out of ships because the plaintiff's men were in the same ; did refuse to furnish and ship men to him ; did prevent men from shipping with him ; did notify the public that they had laid him on the shelf; did publicly notify his customers and friends that he could not ship seamen for them ; did interfere with his business, as aforesaid

did prevent his getting seamen to ship; did prevent his getting employ as shipping-master; and did break up the plaintiff in his business and calling by their conspiracy, acts and doings, as aforesaid, and compel him to abandon his said business."

The terms, rates and rules referred to were contained in a small pamphlet entitled "Constitution and By-laws of the Seamen's Mutual Benefit Association of the city of Boston," and the material provisions thereof were the following:

"No person shall be admitted a member of this association who does not keep a regular seaman's boarding-house.

"No member of the association shall ship any seamen at less wages than the following rates: To the Mediterranean, Coast of Africa, South America, and West Indies; also to the eastward of the Cape of Good Hope and westward of Cape Horn, eighteen dollars per month. All other voyages, except the above-mentioned, twenty dollars per month.

"We will use our best endeavors to prevent our boarders shipping in any vessel where any of the crew are shipped from boarding-houses that are not in good standing with the association.

"Any member of this association, knowingly or wilfully shipping men in any vessel where men are shipped from houses not in good standing with this association, shall be fined the sum of five dollars for each man shipped in any such vessel.

"Any member of this association who may be known to ship men in any office after this association shall have suspended business with said office shall be fined five dollars; but any men that may be shipped previous to the suspension may be permitted to proceed to sea, in whatever vessel they may be shipped in.

"Charge. You promise that, as a member of this association, you will do all in your power to promote the object of its organization, that you will conform to its constitution and by-laws. More especially do you pledge yourself to see that those parts of the constitution relating to rate of wages, promulgated by this association, shall not be violated, either in your own person or those of your fellow members, without immediately informing

the standing committee of the same; that you will not ship any man against the expressed wishes of the Association, in any shipping-office that violates the rate of wages promulgated by us, and that you will do all in your power to preserve those wages inviolate."

There was also a provision for aiding each other to collect their board-bills.

The defendants filed a general demurrer; and the case was reserved, by *Gray*, J., for the determination of the whole court.

*H. W. Paine & N. St. J. Green*, for the defendants, cited *Parker* v. *Huntington*, 2 Gray, 124; *Skinner* v. *Gunton*, 1 Saund. 228 d, *Savile* v. *Roberts*, 1 Ld. Raym. 374; *Wellington* v. *Small*, 3 Cush. 145; *Hutchins* v. *Hutchins*, 7 Hill, 104; *Cotterell* v. *Jones*, 11 C. B. 713, 723; *Commonwealth* v. *Hunt*, 4 Met. 111.

*F. W. Sawyer*, for the plaintiff, cited *Talbot* v. *Cains*, 5 Met. 521; *Adams* v. *Paige*, 7 Pick. 542, 550; *Bird* v. *Randall*, 3 Burr. 1353; *Millar* v. *Taylor*, 4 Burr. 2345; 3 Bl. Com. 123.

CHAPMAN, J. The gist of the plaintiff's action is not the conspiracy alleged in the declaration, but the damage done to the plaintiff by the alleged acts of the defendants; and the averment that the acts were done in pursuance of a conspiracy does not change the nature of the action. *Parker* v. *Huntington*, 2 Gray, 124. In order to be good, the declaration must allege against the defendants the commission of illegal acts. Its allegations must be analyzed, to ascertain whether they contain a sufficient statement of such acts.

The first allegation as to what they did is very loose and general, namely, that, in pursuance of their conspiracy as aforesaid, they did each and every of the above acts and things against the plaintiff. Then follows an enumeration of the acts. (1.) " Did take their men out of ships because the plaintiff's men were in the same." We cannot see that this act is in itself unlawful. It does not appear that they were under any obligation to keep their men on board the same ship with the plaintiff's men, or violated the rights of the plaintiff or of any other person in taking them out. (2.) " Did refuse to furnish and ship men to him." Such refusal is lawful in the absence of any legal

obligation to furnish and ship men to him, and no such obligation is stated. (3.) " Did prevent men from shipping with him." This might be done in many ways which are lawful and proper, and as no illegal methods are stated the allegation is bad. (4.) " Did notify the public that they had laid him on the shelf." In another part of the declaration this is alleged to mean that the defendants " were acting against him as aforesaid." It does not appear to be slanderous, and therefore is not actionable. (5.) " Did publicly notify his customers and friends that he could not ship seamen for them." This is not actionable, because it does not appear that he had a right to ship seamen for them. (6.) " Did interfere with his business as aforesaid; did prevent his getting seamen to ship; did prevent his getting employ as shipping-master; and did break up the plaintiff in his business and calling by their conspiracy, acts and doings, as aforesaid, and compel him to abandon his said business." All this adds nothing to the substantial allegations of acts done by the defendants, but is to be regarded as alleging the consequences of the acts before alleged.

If we look at the allegations of acts done in connection with the intent set forth, we must look into the rules and regulations referred to, a copy of which is annexed to the declaration. They are entitled " Constitution and By-laws of the Seamen's Mutual Benefit Association of the city of Boston." No person can be a member who does not keep a regular seaman's boarding-house. Members are forbidden to ship seamen for less than certain specified rates of wages. They are to use their best endeavors to prevent their boarders from shipping in any vessel when any of the crew are shipped from boarding-houses that are not in good standing with the association. Other articles relate to the duties of the members towards each other, in endeavoring to secure payment of board-bills, and not taking advantage of each other. We can see nothing criminal in any of these stipulations see *Commonwealth* v. *Hunt,* 4 Met. 111; and nothing illegal. If their effect is to destroy the business of shipping-masters who are not members of the association, it is such a result as in the competition of business often follows from

course of proceeding that the law permits. New inventions and new methods of transacting business often destroy the business of those who adhere to old methods. Sometimes associations break down the business of individuals, and sometimes an individual is able to destroy the business of associated men. It would be nothing novel if the plaintiff in the exercise of his ingenuity should in his turn adopt some improvement that shall compel the defendants to dissolve their connection. As the declaration sets forth no illegal acts on the part of the defend-- ants, the demurrer must be sustained.